Nicola **FABRIZI**, Administrator of the Estate of Marie Fabrizi, Deceased, Plaintiff,

v.

James F. **GRIFFIN**, James T. **Nolan** and Kramer Brothers Freight Lines, Inc., Defendants.

Civ. A. 12118.

United States District Court
W. D. Pennsylvania.

May 23, 1958.

GOURLEY, Chief Judge.

This is an action to recover damages under the Pennsylvania Wrongful Death, 12 P.S. §§ 1601–1604, and Survival, 20 P.S. § 320.601 et seq., Statutes arising out of an automobile-truck accident in which the wife of the fiduciary plaintiff was instantly killed at the age of fifty-five.

Verdicts were returned in favor of Nicola Fabrizi in his fiduciary capacity and as representative of the estate of his wife under the Pennsylvania Survival Statute in the amount of $12,200, and under the Pennsylvania Wrongful Death Statute for the funeral expenses and pecuniary loss suffered by him in the amount of $68,100.

The negligence of the defendant is not disputed and the sole question posed in the Motion for New Trial is the excessiveness of the verdicts returned under the Survival Statute and Wrongful Death Statute.

### Survival Action

Under the Survival Statute of Pennsylvania, damages are predicated upon the earnings of the deceased person which would have been earned during the period of her life expectancy less the probable cost of her maintenance, said amount being reduced to its present worth. 20 Pa.P.S. Section 772 [1]; Murray v. Philadelphia Transportation Co., 359 Pa. 69, 58 A.2d 323; Ferne v. Chadderton, 363 Pa. 191, 69 A.2d 104; Fisher v. Dye, 386 Pa. 141, 125 A.2d 472; Burns v. Goldberg, 3 Cir., 210 F.2d 646.

Defendant advances the proposition that plaintiff should not be permitted to assert damages in behalf of the decedent predicated upon loss of earnings for the reason that plaintiff's individual income tax return is not a joint return and indicates all earnings to have been made in the name of plaintiff. That plaintiff's testimony that said income was divided between himself and the decedent wife for their joint effort in the operation of the restaurant business was conflicting, inconsistent and contradictory testimony on the part of a witness and should be deemed to have no probative value.

The law is well settled that the credibility of witnesses and resolution of conflict in their testimony is for the jury. Where in one part of a plaintiff's testimony he is entitled to have his case submitted to the jury, and in another he is not, it is for the jury to reconcile the conflicting statements. Parker v. Yellow Cab Co., 391 Pa. 566, 137 A.2d 317. I must, therefore, in view of the jury's verdict accept as true plaintiff's statement that he divided the income with decedent. In view of the record being replete with testimony of the efforts exerted by decedent in the conduct of the restaurant business epitomized in her services as cook and attendant, and that the operation of the business would have

1. Now 20 P.S.Pa. §§ 320.603, 320.613.

been rendered impossible without her assistance, the jury had many inferences supported by the weight of the credible evidence, upon which to buttress its conclusion. The business conducted was certainly of a type that the wife could have carried on the enterprise the same as her husband has been doing if she had been the surviving spouse.

Assuming, therefore, that decedent's earnings were in the realm of $1,000 per annum as evidenced by one-half the profits garnered in plaintiff's restaurant and, further cognizant that plaintiff's potential life as indicated by the United States Mortality Tables is twenty-three years, decedent's abortive death at the age of fifty-five could have resulted in the loss of $23,000 in future earnings.

The record bespeaks an unusual degree of frugality on the part of the decedent, who confined her life to the elementary amenities of living, devoid of entertainment or expense consuming luxuries. At most, her maintenance consumed $300 per annum.

■ I am satisfied that an award of $12,200 under the Survival Statute is reasonable and deducible under the evidence.

### Wrongful Death Statute

■ In an action by a husband for the loss of his wife, his pecuniary compensation for the loss is the present value of the services as a wife; from this, however, must be deducted the possible cost of her maintenance which he would have been compelled to pay, as well as incidental items he would probably have given her. Gaydos v. Domabyl, 301 Pa. 523, 152 A. 549; Siidekum v. Animal Rescue League of Pittsburgh, 353 Pa. 408, 45 A.2d 59; Burns v. Goldberg, supra.

■ Also, the frugality, industry, usefulness, attention and tender solicitude of a wife surely make her services greater than those of an ordinary servant, and, therefore, worth more. These elements are not to be excluded from the consideration of a jury in making a mere money estimate of value. Filer v. Filer, 301 Pa. 461, 152 A. 567.

Since the award under the Wrongful Death Statute totaled $68,100, of which $2,980 was represented in funeral costs, the verdict essentially is a payment of $65,120 for the pecuniary loss suffered by the husband due to the loss of the wife's services.

Defendant in support of its position that the verdict is excessive, cites a number of Pennsylvania cases sustaining lesser awards under similar circumstances. I have always believed, however, that no two cases involving the loss of life present identical circumstances.

■■ Verdicts in other cases are not of much value as criteria in appraising the result reached in the instant case. Permissible differences in arriving at verdicts must be allowed between juries. The economics of the situation in the period involved should be considered. The amount of the verdict must be viewed in the light of what it is capable of purchasing. There cannot be a standard verdict. Kessen v. Bernhardt, D.C., 157 F.Supp. 652.

The loss of a wife's services are imponderables which, indeed, command almost inestimable values. The companionship which a wife brings to a husband in the daily routine and conduct of living, her encouraging glance or invigorating smile at times of anxiety or weakness—when the dull thud and clash of industrial and economic competition have brought nerve and sinew to a breaking point, or the husband departing to his job—uncertain of his day's successes or tribulations, receiving his wife's reassurance, building up his stamina and giving him the will and zest to cope each day with what may be ahead—or when the husband, imbued with indomitable will and spirit to achieve the impossible, brought on by his wife's drive and devotion, achieving conquests and moving beyond vistas of the normal and routine. What is the economic value of these intangible services which in many lives draws the distinction between failure and success?

The companionship of a woman and a man joined together in Matrimony has yet to be adequately described. Unfortunately, it cannot be appreciated by anyone who has not first enjoyed it and then been deprived of its solace. This companionship is the elixir of life to the youth and to the middle-aged, but it is the necessity of life, as oxygen is to the air, to those who are treading the pathway of life in the later years of one's existence on this earth.

This was an intelligent jury who by a goodly majority was composed of women who were asked to remember the things that a wife does for a husband, and of which the husband is blissfully unaware. The jury demonstrated a most intense and acute awareness of the value of those services. A conscience would be indeed fragile if it were to be shocked into declaring excessive the sum returned in the verdict, as measured against the loss sustained by the husband in the Wrongful Death Action.

Defendant counsel, in oral argument and in his brief, for the first time makes vociferous objection to plaintiff counsel's summation speech to the jury, alleging prejudicial and emotional appeal.

The general rule in the Federal courts has been that the remarks of counsel to the jury, to constitute a basis for reversible error, must be objected to at the time they are made. I am compelled to conclude that the belated criticism of these remarks is untimely, and viewing the trial as a whole, and in the light of the meticulous instructions which this court presented in outlining with great particularity the specific elements of damage under each of the respective causes of action, defendant's complaint is without merit. Uhl v. Echols Transfer Company, 5 Cir., 238 F.2d 760.

As this Circuit has frequently reiterated, while an award may be high, it should stand if there is ample evidence to justify it. It is not my prerogative to arbitrarily substitute my judgment for that of the jury. Trowbridge v. Abrasive Co. of Philadelphia, 3 Cir., 190 F.2d 825; Lebeck v. William A. Jarvis, Inc., 3 Cir., 250 F.2d 285; Thomas v. Conemaugh and Black Lick Railroad Company, 3 Cir., 234 F.2d 429.

Upon recapitulation of all the credible evidence, I am convinced that the quantum of proof is such that a jury could reasonably conclude that justice required an award in the amounts rendered.

It is my considered judgment that the verdict was not against the evidence, weight of the evidence, or the law.

After again applying most reflected judgment to the record, I believe that under all the credible evidence justice sustains a right of recovery in the amount of $12,200 under the Survival Statute and in the amount of $68,100 under the Wrongful Death Statute.

An appropriate Order is entered.